United States District Court
Southern District of Texas
**ENTERED**
April 22, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RICHARD ALLEN PAZ,       §
(TDCJ # 00447549),        §
                             §
      *Plaintiff,*         §
                             §
vs.                          §     CIVIL ACTION NO. H-22-1898
                             §
KENNETH HAYDEN, Precinct 4    §
Constable, *et al.*,          §
                             §
      *Defendants.*

## MEMORANDUM OPINION AND ORDER

The plaintiff, Richard Allen Paz (TDCJ # 00447549), sued Montgomery County Precinct 4 Constable Kenneth Hayden and four unidentified deputies under 42 U.S.C. § 1983, alleging that they conducted an illegal search of the house where he was living, damaged his property, illegally arrested him, and filed false charges against him. (Dkt. 1). At the Court's request, Paz filed a More Definite Statement of his claims. (Dkt. 12). The Court also received administrative records from the Montgomery County Constable's Office. (Dkt. 18). After a review of these records, the Court ordered service of process on Constable Hayden, Deputy Rickey Ford, Deputy Ronald Hamlet, and Deputy Christopher Taylor. (Dkt. 20). The defendants answered the complaint, (Dkt. 27), and then filed a motion for summary judgment, supported by numerous exhibits. (Dkt. 32). Paz has not responded to the motion,

and his time to do so has now expired. Having reviewed the motion and its exhibits, all matters of record, and the applicable law, the Court grants the defendants' motion for summary judgment and dismisses this action with prejudice.

## I.    **BACKGROUND**

Paz filed his initial complaint while he was a pretrial detainee at the Montgomery County Jail. (Dkt. 1). In that complaint, Paz alleged that on April 11, 2022, Hayden and four deputies arrived at the house where he rented a room, looking for a "female under the name Callie." (*Id.* at 4). Paz alleged that no one named Callie was living in the house or had ever lived at that house. (*Id.*). He alleged that the deputies tore down wooden slats of the fence to gain access to the backyard and tore the security cameras off the house. (*Id.* at 6). He alleged that the search of the property and the house was illegal and that he was illegally arrested when the search was completed. (*Id.* at 3). He also alleged that the deputies filed false charges against him. (*Id.*). As relief, he sought compensatory and punitive damages, as well as injunctive relief. (*Id.* at 4).

Because the charges arising from Paz's April 11 arrest were still pending, the Court initially stayed this action under *Heck v. Humphrey*, 512 U.S. 477 (1994). (Dkt. 4). After the charges arising from the April 11 arrest were dismissed, the Court granted Paz's motion to reinstate this case. (Dkt. 7). At the Court's request, Paz then supplemented his complaint with a More Definite Statement. (Dkt. 12).

In his More Definite Statement, Paz explains that on December 11, 2021, while he was on parole for a 1987 conviction for aggravated robbery, he was stopped for a traffic violation and found to be in possession of a .22 rifle.[1] (*Id.* at 2). Paz was charged with being a felon in possession of a firearm, and that charge was still pending on April 11, 2022. (*Id.* at 2-3).

On April 11, Paz was renting a room in a house owned by Zachary Taylor Goates. (*Id.* at 3-4). That morning, Paz was in the laundry room with Goates's brother, Matthew, when they heard a noise outside. (*Id.*). Matthew opened the side door and saw deputies with their guns drawn prying wooden slats off the privacy fence that surrounds the backyard. (*Id.*). When the deputies saw the door open, they ordered Matthew and Paz out of the house. (*Id.*). The deputies were yelling, "Where's Callie?" (*Id.*). Paz denied knowing anyone named Callie and denied that Callie was at the house. (*Id.*). The deputies said that they could see a shotgun on a couch in the house, and they arrested Paz on a charge of felon in possession of a firearm. (*Id.* at 4-5). After a search of the house, they also charged him with possession of a controlled substance, possession of a prohibited weapon, and bail jumping. (*Id.* at 5). Paz alleges that the resulting charges were dismissed after he

---

[1]Paz asserts that the unloaded rifle was in the bed of the pick-up truck he was driving that belonged to a friend whom he was helping move to a new apartment. (Dkt. 12, p. 3). He denies that he was in possession of the rifle.

accepted a 10-year plea offer on the pending December 11 felon-in-possession charge. (*Id.* at 8).

Paz alleges that his arrest was illegal because the deputies "would not show me no arrest warrant [for Callie], no search warrant, nothing to justify them being there." (*Id.* at 7, 9). He alleges that the deputies illegally forced their way into the backyard, "dragged" him out of the house, searched the house, found guns legally owned by the owner of the house, and charged him with possession of them because of his prior record. (*Id.* at 10).

The defendants answered Paz's complaint, (Dkt. 27), and then filed a motion for summary judgment. (Dkt. 32). The summary judgment evidence shows that one Callie McCawley was charged with felony possession of a controlled substance. (Dkt. 32-1). The district court had set aside Callie's bond, and a capias had been issued for her arrest. (Dkt. 32-2).

On the morning of April 11, deputies received a tip that Callie was at the residence where Paz rented a room. (Dkt. 32-3, p. 1). Hayden, Hamlet, Ford, and Taylor arrived at the residence around 9:45 a.m. (Dkts. 32-3, p. 1; 32-4, p. 3). Ford approached the front door, Hayden went to the right side of the front yard, and Taylor went to the left side of the front yard. (Dkt. 32-3, p. 1). The wooden fence surrounding the back yard was missing several boards, and through the missing slats, Hayden could see an open door on the corner of the house and a man sitting just

4/ 20

inside with a shotgun next to him. (*Id.* at 1-2).   According to Hayden, the man knew

Hayden was there and Hayden had no safe means of retreat.   (*Id.* at 2-3).   He

therefore ordered the man to come out of the house.   (*Id.* at 3).   Because there was

no gate to the yard on that side, Hamlet removed additional fence boards so that he

could enter the yard and secure the man for officer safety.  (*Id.*).

While Hayden and Hamlet were securing the man in the yard, Hayden noticed

Paz standing in the room that the man had just left.  (*Id.*).   He ordered Paz to come

outside for officer safety.   (*Id.*).   As Paz left the house, someone inside closed the

door to the room Paz and the other man had just left.  (*Id.*).   Concerned for officer

safety with other people still in the house, Taylor and Ford entered the room to secure

it. (*Id.* at 3).   While doing so, they found an illegal short-barreled AR-15-style rifle,

illegal drugs in plain view, and various items of drug paraphernalia in the room Paz

had just left. (*Id.* at 4).   Ford, Taylor, and Hamlet then conducted a security sweep

of the entire residence and brought the remaining occupants outside.  (*Id.*).   The

deputies then applied for a search warrant to search the residence.  (*Id.*).

Records provided as part of the *Martinez* report reflect that while Paz was

detained outside, deputies performed a pat-down search for weapons. (Dkt. 18-6, p.

2).   That search revealed a baggie containing methamphetamine in Paz's jeans

pocket. (*Id.*).   Paz initially gave deputies a false name and date of birth.  (*Id.*).   The

deputies were able to correctly identify Paz through a portable fingerprint scanner,

and after doing so they learned that Paz had an outstanding "blue warrant" from Pardons and Paroles and an outstanding local warrant for a bond forfeiture. (*Id.*). Paz was arrested on the warrants, as well as on several new charges. (*Id.*). Callie was ultimately arrested at a different location more than an hour after the deputies had arrived at Paz's residence. (Dkt. 32-6).

A grand jury indicted Paz on charges of unlawful possession of a firearm by a felon, possession of methamphetamine, possession of a prohibited weapon, and bail jumping based on the events of April 11. (Dkt. 32-7). On January 10, 2023, Paz pleaded guilty to the December 2021 charge of possession of a firearm by a felon. (Dkt. 32-9, pp. 1-4). In exchange for that plea, the State dismissed all of the charges against him arising from the April 11 events. (*Id.* at 5-8).

In their motion for summary judgment, the defendants contend that they are entitled to summary judgment in their favor because the evidence shows that they did not violate Paz's constitutional rights. (Dkt. 32). Paz did not respond to the motion, and his time to do so has now expired.[2]

---

[2]Southern District of Texas Local Rule 7.4 provides that the failure to respond to a motion will be taken as a representation of no opposition. Because Paz has failed to respond to the motion, the Court views him as not opposing the motion. However, because Paz is proceeding *pro se*, the Court will address the merits of the defendants' motion.
6/ 20

## II.   LEGAL STANDARDS

### A.   Actions Under 42 U.S.C. § 1983

Paz sues the defendants under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The dispute in this case focuses on the first element: whether the defendants violated Paz's constitutional rights.

### B.   Summary Judgment

The defendants have filed a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee*

*Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (cleaned up).

When considering a motion for summary judgment, the Court views all evidence and draw all inferences "in the light most favorable to the [nonmoving] party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380. When both parties have submitted evidence that tends to show conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995). However, the Court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). After viewing all the evidence in the light most favorable to the nonmoving party, summary judgment may be granted if the nonmoving party has failed to show that disputed issues of fact exist as to every element essential to his case on which he bears the burden of proof. *See Celotex,* 477 U.S. at 322-23.

**C.**     ***Pro Se* Pleadings**

Because Paz is representing himself, the Court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013) (per curiam)).  "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

**III.  DISCUSSION**

**A.     Claim for False Arrest**

In his first claim, Paz alleges that he was illegally detained and then falsely arrested in violation of his Fourth Amendment rights.  While fact questions exist as to whether Paz's initial detention was legal, his arrest on his unrelated outstanding warrants negates his claim for false arrest and entitles the defendants to summary judgment in their favor.

An investigatory stop, or temporary detention, is authorized when it is "supported by a reasonable suspicion 'that the person apprehended is committing or

has committed a criminal offense.'" *United States v. Thomas*, 997 F.3d 603, 609 (5th Cir. 2021) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)), *cert. denied*, 142 S. Ct. 828 (2022). In addition, the police may temporarily detain the occupants of a residence during the execution of a valid search warrant, *see Michigan v. Summers*, 452 U.S., 692, 705 (1981), or during the execution of a valid arrest warrant for someone reasonably believed to be a resident. *See, e.g., Freeman v. Gore*, 483 F.3d 404, 412 (5th Cir. 2007) (citing *Anderson v. United States*, 107 F. Supp. 2d 191, 196 (E.D.N.Y. 2000)). But a valid arrest warrant does not give police the authority to search a third party's residence for the subject of that arrest warrant if the subject of the warrant does not live at that residence, nor may the police detain individuals at a third-party's residence while they investigate the whereabouts of the subject of an arrest warrant who lives elsewhere. *See Steagald v. United States*, 451 U.S. 204, 213-14 (1981); *see also United States v. Davy*, No. 3:12-cr-14, 2013 WL 4083312, at *4 (S.D. Tex. Aug. 1, 2013) (law enforcement may enter a third-party's residence based on an arrest warrant only if there is an objectively reasonable belief that *the suspect actually resides at that residence* and is present there at the time).

The facts in this case are similar to those in *Freeman*. In that case, officers had a felony arrest warrant for Kevin Freeman, and they went to his home to attempt to serve it. *See Freeman*, 483 F.3d at 408. No one answered the door, but Kevin's sister Sheila answered Kevin's phone. *Id.* Sheila told the officers that she was not

inside Kevin's home, but instead was next door at the house belonging to her mother, Linda Freeman. *Id.* Sheila then stepped outside of her mother's house and told the officers that Kevin was not at home. *Id.*

While Sheila was talking to the officers, Linda Freeman stepped outside her house and began yelling at the officers. *Id.* The officers asked for permission to search Linda's house for Kevin, but she refused and told them they would need a search warrant. *Id.* One of the officers threatened to arrest Linda if she did not permit the search, but she continued to refuse. *Id.* The officers then handcuffed Linda and put her in the back of a patrol car. *Id.* Some time later, after being told that they could neither search Linda's house without a warrant nor arrest her for refusing to agree to a search, the officers released her. *Id.* at 409.

Linda sued the officers under § 1983 for false arrest. *Id.* The officers' motion for summary judgment was denied, and the officers appealed. *Id.* In affirming the denial of summary judgment, the Fifth Circuit explained:

> In this case, the deputies had a warrant for the arrest of Freeman's son, Kevin, who resided at 16449 County Road 15. While *Summers* and *Anderson* would authorize the deputies to detain anyone found at that address during the execution of their arrest warrant for Kevin, nothing in either of those cases provides authority for the proposition that the deputies could detain Freeman outside of her own home, 16447 County Road 15, while they inquired about Kevin's whereabouts. Because Freeman was at her own home when she was detained, and because the deputies had no right to search *Freeman's home* based on their arrest warrant for Kevin, the detention cannot be justified under *Summers*.

11/ 20

*Id.* at 412; *see also Steagald,* 451 U.S. at 213-14 (arrest warrant does not give officers authority to search residence of third-party, even if officers have probable cause to believe that suspect is within).

Like the officers in *Freeman*, the defendants in this case went to Paz's residence with an arrest warrant for Callie—a non-resident of the house. The defendants did not have a search warrant, and the arrest warrant for a non-resident of the house did not provide them with the authority to detain the lawful residents of the house while they investigated whether Callie was present. Despite this, the defendants ordered Paz out of the house and detained him while they investigated Callie's whereabouts. Like the detention of Linda Freeman, Paz's detention under the auspices of an arrest warrant for the non-resident Callie appears to be illegal.[3]

Nevertheless, even if fact questions exist concerning the legality of Paz's detention, there is no question that his arrest was lawful based on his unrelated outstanding warrants. To prevail on a claim of false arrest, the plaintiff must show that the defendant did not have probable cause for the arrest when it was made. *See, e.g., Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 206-07 (5th Cir. 2009); *Brown v.*

---

[3]In support of the motion for summary judgment, Hayden filed an affidavit asserting that Paz and the other residents were detained for officer safety. (Dkt. 32). The statements in Hayden's affidavit conflict in critical respects with Paz's sworn allegations in his More Definite Statement, (Dkt. 12), and with the statements contained in Paz's Individual Arrest Report, which was included in the *Martinez* report provided to this Court. (Dkt. 18-6). Because the Court concludes that Paz's arrest was legal regardless of the potential illegality of his detention, the Court need not address these factual discrepancies.

*Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). Probable cause to arrest exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir. 2001) (cleaned up)). "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam) (quoting *Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir. 1995)). Undisputed evidence that an arrest was made under a facially valid arrest warrant therefore bars a § 1983 claim for false arrest. *See Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir. 1982) ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest."); *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 652 (S.D. Tex. 2000) (citing *Baker*, 443 U.S. at 139).

The fact that the defendants discovered Paz's outstanding warrants during an arguably illegal detention does not change this result. *See Utah v. Strieff,* 579 U.S. 232, 240 (2016) (an arrest on a pre-existing warrant is a ministerial act compelled by the warrant regardless of the lawfulness of the initial stop or detention); *United States v. Green*, 111 F.3d 515, 521 (7th Cir. 1997) ("It would be startling to suggest that because the police illegally stopped an automobile, they cannot arrest an

occupant who is found to be wanted on a warrant—in a sense requiring an official call of 'Olly, Olly, Oxen Free.'"); *Allen v. City of Columbia*, No. 3:23-1783-SAL-PJG, 2023 WL 6283360, at \*4 (D.S.C. Aug. 15, 2023) (finding that the plaintiff's false arrest claim failed as a matter of law because "[e]ven assuming for the sake of argument that [the officer] lacked reasonable suspicion to initially detain Allen or probable cause to arrest him on the gun-related charges, [the officer] had a lawful duty to arrest Allen once he discovered the outstanding arrest warrant, rendering Allen's detention lawful from that point forward").

In sum, Paz has not carried his burden to show that genuine disputes of fact exist material to the question of whether he was falsely arrested.  His arrest on the valid, pre-existing blue warrant and arrest warrant bar his false arrest claim as a matter of law.  The defendants' motion for summary judgment on this claim is granted, and Paz's false arrest claim is dismissed with prejudice.

### B.    Claim for Illegal Search

In his second claim, Paz alleges that the search of his residence was illegal because the defendants had neither probable cause nor a warrant for the search. While fact questions exist as to whether the search was valid, the defendants are entitled to summary judgment on this claim because Paz has not show that he suffered a cognizable injury as a result of the search.

To the extent that the defendants entered Paz's residence in an effort to

execute the arrest warrant for Callie, who did not reside there, the arrest warrant did

not support entry into the home, and any ensuing search was arguably illegal. *See*

*Steagald*, 451 U.S. at 213-14; *United States v. Ward*, 561 F.3d 414, 420 n.17 (5th

Cir. 2009). The defendants acknowledge that the arrest warrant could not support a

search, but they contend that they did not search the house pursuant to the arrest

warrant, but instead simply performed a protective sweep of the house to ensure

officer safety. They argue that they then obtained a valid search warrant and

searched the house under that warrant. Regardless of any fact questions that might

exist about the validity of the defendants' initial entry into the house, the defendants

are entitled to summary judgment in their favor on the illegal search claim because

Paz cannot establish that he suffered a cognizable injury as a result of the search.

The only possible injury Paz suffered as a result of the allegedly illegal search

was his arrest on the new charges of possession of a firearm by a felon and

possession of an illegal weapon.[4] While the Fifth Circuit has not clearly addressed

the question of whether an arrestee may be awarded damages for a lawful arrest that

arises from an unlawful search, *see Thompson v. Link*, No. 19-cv-0252, 2019 WL

2397641, at *3-4 (W.D. La. June 4, 2019) (collecting cases), other courts have

---

[4]Paz's arrest for possession of methamphetamine was the result of the pat-down
search during his detention. He was also arrested on unrelated outstanding warrants. These
charges did not result from the search of the house.

concluded that damages are not available under those circumstances. *See, e.g., Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir 1999); *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000); *Davis v. Cedar Hill Police Dep't*, No. 3:17-cv-278-M-BN, 2018 WL 1633023, at *8 (N.D. Tex. Mar. 9, 2018). Instead, to be entitled to damages, Paz must show that he was harmed by the illegal search in some way *other than* by the arrest and criminal prosecution that was later dismissed. *See Heck*, 512 U.S. at 487 n.7 ("In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the "injury" of being convicted and imprisoned." (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986))); *see also Silver v. D.C. Metro. Police Dep't*, 939 F. Supp. 2d 20, 22-23 (D.D.C. 2013) (holding that the plaintiff was not entitled to compensation based on the stress, trouble, and pain caused by his legal arrest that followed an illegal search).

Even if Paz could show that genuine issues of material fact exist concerning whether his arrest resulted from an illegal search, he has not alleged facts showing that he suffered any cognizable injury. In the absence of evidence of some injury independent of his arrest and prosecution, Paz's claim for an illegal search fails as a matter of law. The defendants are entitled to summary judgment, and Paz's claim against them for an illegal search is dismissed with prejudice.

**C.    Claim for False Charges or Malicious Prosecution**

In his third claim, Paz alleges that the defendants violated his constitutional

rights by filing false charges against him.  The Fifth Circuit has recognized that the

filing of false charges may violate the Fourteenth Amendment. *See Cole v. Hunter,*

802 F.3d 752, 777 (5th Cir. 2015), *vacated on other grounds by Hunter v, Cole,* 580

U.S. 994 (2016); *see also Morgan v. Chapman*, 629 F. Supp. 3d 616, 626 (S.D. Tex.

2022) (holding that a claim that the defendant fabricated evidence and used it to

bring false charges against the plaintiff fell under the Fourteenth Amendment).  A

claim for "false charges" arises from the fabrication of evidence, and the plaintiff

must show that "(1) the officers fabricated evidence (2) for the purpose of falsely

obtaining a charge and (3) that the evidence influenced the decision to charge." *Cole*

*v. Hunter*, 497 F. Supp. 3d 172, 190 (N.D. Tex. 2020).

Paz does not allege that the defendants fabricated evidence against him, nor

does he point to any evidence showing that any genuine issues of material fact exist

concerning fabricated evidence.  In the absence of such evidence, Paz fails to state a

claim for false charges and fails to carry his burden to avoid the defendants' motion

for summary judgment.

In the alternative, and construing Paz's complaint liberally as the Court must,

Paz's allegations could be interpreted as an attempt to allege a claim for malicious

prosecution.  To prove a claim for malicious prosecution, the plaintiff must establish

facts showing that "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious; [. . .] and (iii) the prosecution terminated in the acquittal or discharge of the accused." *Thompson v. Clark*, 596 U.S. 36, 44 (2022). But the independent intermediary doctrine applies to the element of probable cause, providing that when the "facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Curtis v. Sowell*, 761 F. App'x 302, 304 (5th Cir. 2019) (per curiam) (cleaned up). The same doctrine applies to a claim for malicious prosecution. *See Trevino v. Iden*, 79 F.4th 524, 531 n.4 (5th Cir. 2023) (noting that the independent intermediary doctrine applies to claims of both false arrest and malicious prosecution).

Paz does not allege facts showing that the charges against him were brought without probable cause. And even if he had made such an allegation, his claim would fail under the independent intermediary doctrine. The undisputed summary judgment evidence shows that a grand jury found that probable cause existed to support the charges against Paz arising from the April 11 events. (Dkt. 32-7). This breaks any chain of causation and insulates the defendants from liability for an allegedly malicious prosecution.

Whether Paz's third claim is considered as one for false charges or for

malicious prosecution, Paz has failed to carry his burden to show that genuine disputes of material fact exist concerning his claim. The defendants' motion for summary judgment is granted, and Paz's claim for false charges or malicious prosecution is dismissed with prejudice.

### D.   Claim for Property Damage

In his final claim, Paz alleges that the defendants damaged the house and portions of the fence during their entry into the yard and search of the house. This claim is dismissed because Paz has no standing to bring a claim for this damage.

To establish standing in a civil rights case, the plaintiff must show (1) an injury in fact, defined as an invasion of a legally protected interest; (2) causation between the injury in fact and the defendant's actions; and (3) a likelihood that the plaintiff's injury will be remedied by the relief the plaintiff seeks. *See Sprint Comm'cns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008). When a tenant has no legal obligation to make repairs to a rented property, the tenant has no standing to pursue a claim for damages to make the repairs. *Cf. United States v. Bostwick*, 94 U.S. 53, 68 (1876) (in the absence of a specific provision in the lease obligating a tenant to make repairs, a tenant is not answerable for accidental damages he did not cause).

Paz alleges that he rented a room in the house that was owned by Goates. In response to the defendants' motion for summary judgment, Paz has offered no

evidence showing that he had an obligation to repair the fence or any of the damage to the house. In the absence of such an obligation, Paz does not have standing to seek damages for the physical damage to the house or the fence. The defendants' motion for summary judgment as to the claim for property damage is granted, and this claim is dismissed with prejudice.

## IV.   CONCLUSION

Based on the above, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment, (Dkt. 32), is **GRANTED**.

2. Paz's complaint, (Dkt. 1), is **DISMISSED** with prejudice.

3. Any pending motions are **DENIED** as moot.

4. Final judgment will be separately entered.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas on _____*Apr. 22*_____, 2024.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE